IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|     Respondent/Plaintiff,         ) | |
| vs.                                                          ) | No. 3:02-CR-0235-H (02) |
|                                        ) | No. 3:06-CV-1365-H (BH) |
| JACK KENNETH BOYD, ID # 28498-177, ) | ECF |
|     Movant/Defendant.           ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

**I.  BACKGROUND**

**A.  Nature of the Case**

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. The respondent is the United States of America (government).

**B.  Procedural History**

On August 7, 2002, a grand jury indicted movant for (1) conspiring to manufacture and possess with intent to distribute methamphetamine, (2) possessing a firearm having been previously convicted of a felony, and (3) possessing a firearm in connection with a drug trafficking offense. On September 26, 2002, movant pled guilty to the conspiracy count. He signed a plea agreement which provides among other things that (1) the charged offense carries a statutory maximum sentence of life imprisonment; (2) the Court would impose his sentence pursuant to the United States Sentencing Guidelines and that he understood that "no one can predict with certainty what guideline range

will be applicable in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation"; (3) movant "has thoroughly reviewed all aspects of this case with his attorney" and "has received meaningful and satisfactory explanations from his attorney concerning each paragraph of this plea agreement, each of his rights affected by this agreement and alternatives available to him other than entering into this agreement"; (4) the plea "is freely and voluntarily made and not the result of force or threats or of promises apart from those set forth in this plea agreement"; and (5) the plea agreement constitutes the entire agreement between the parties "and may not be modified unless done so in writing and signed by all parties." In the plea agreement, furthermore, movant waived his right to appeal his conviction and sentence, and further waived his right to contest his conviction and sentence in any collateral proceeding. However, he specifically reserved the right to appeal (a) a sentence exceeding the statutory maximum punishment, (b) an upward departure from the guideline range deemed applicable by the district court, (c) an arithmetic error at sentencing, and (d) a claim of ineffective assistance of counsel.

    Before accepting the plea, the Court examined movant as to its voluntariness. Movant stated that he was forty-two years old and graduated from high school. He stated that his attorney reviewed the plea agreement with him before he signed it. After the prosecutor summarized the plea agreement on the record, including the provisions listed in the previous paragraph, counsel stated that the summary was substantially correct and that he went over the agreement with movant before he signed it. Movant agreed with counsel's statement. The Court highlighted the provision regarding waiver of appellate rights, and specifically asked counsel whether he discussed such provision with movant – to which counsel answered that both he and another attorney talked with movant about that provision. Movant again agreed with counsel's answer, and indicated that he had no

2

questions about the plea agreement. After the prosecutor read the factual resume to him, movant agreed that the document accurately reflected the facts of this case as they applied to him. The Court accepted the guilty plea after finding that the factual resume provides a factual basis for the plea, and that movant had voluntarily pled guilty.

On October 9, 2003, the Court conducted a sentencing hearing in which it heard testimony from movant and his father. The Court thereafter entered judgment upon movant's guilty plea and sentenced him to 262 months imprisonment. Movant filed an appeal which was ultimately dismissed based upon the waiver of appeal in the plea agreement.

In July 2006, movant filed the instant *pro se* motion to vacate wherein he claims that (1) his attorney failed to advise him regarding all terms of the plea agreement, thus causing him to involuntarily waive his right to appeal and (2) his attorney's ineffectiveness violates his right to due process. He specifically states that he does not seek to vacate his entire plea agreement, but only that provision providing for his waiver of appeal. He submitted his own affidavit to support his motion in which he avers that (1) his attorney did not explain that he was waiving the right to appeal his sentence when he agreed to plead guilty; (2) he had very little time to review the agreement before signing it because he was shown the agreement "just about two minutes before the plea hearing"; (3) although he "may have agreed that [he] understood what rights [he] was waiving by signing the plea", he "did not understand exactly what the appeal waiver meant because [his] attorney did not explain it to [him] or point it out to [him]"; and (4) if he "had known that the appeal waiver would preclude [him] from challenging the sentence imposed by the court, [he] would have asked [his] attorney to ask for it to be removed."

3

On September 20, 2006, movant, through retained counsel, filed a memorandum in support of his motion to vacate. He therein asserts that his "Fifth Amendment right to due process was violated" when he entered into the "plea agreement unaware that, by signing the plea agreement, he was waiving the right to appeal his sentence if he were sentenced unconstitutionally." He further asserts that his "Sixth Amendment right to effective assistance of counsel was violated" because his lack of knowledge regarding the appeal waiver directly resulted from actions and inaction of his former attorneys. As exhibits, he submitted a letter to the Court received August 5, 2003, and second affidavit from himself. In the letter, movant indicates that he is "firing" his attorney for various reasons, including a failure of communication for "the past 3 ½ months." In the second affidavit, he avers among other things that (1) he had difficulties contacting his attorneys; (2) although he may have signed the plea agreement in early September 2002, no one "went over" the agreement "in detail – paragraph by paragraph"; (3) he would regularly answer "Yes, sir" to the Court's inquiries at the plea hearing "to show respect"; (4) he believed that he answered "Yes, sir" to the inquiry regarding the waiver provision because he was nervous and "did not hear or understand the question or know what else to say"; (5) he would not have accepted the waiver if he understood that it would prevent him from challenging the imposed sentence, but he "certainly still would have pleaded guilty"; and (6) he would have asked his attorney to change the agreement so that he could appeal.

In its response to the motion to vacate, the government argues that movant's "sole claim" for ineffective assistance of counsel lacks merit and provides an affidavit of one of movant's defense

attorneys to support its position.[1]  In his reply to the government's response, movant argues that the government did not respond to his due process claim, and that the government is incorrect on his claim of ineffective assistance of counsel.

Movant's claims require inquiry into whether he knowingly and voluntarily waived his right to appeal except as set forth in his plea agreement.

## II.  KNOWING AND VOLUNTARY WAIVER

Although movant specifically does not challenge or contest the voluntariness of his guilty plea, he contends that he did not knowingly and voluntarily waive his right to appeal because his attorney did not advise him of the consequences of such waiver.  He contends that he did not understand the nature or consequences of the waiver or that the waiver prevented him from appealing an unconstitutional sentence.  He relies upon *United States v. Baty*, 980 F.2d 977 (5th Cir. 1992) to support a finding that he did not knowingly waive his right to appeal.

A federal criminal defendant has no constitutional right to appeal his conviction or sentence – the right "is purely a creature of statute."  *See Abney v. United States*, 431 U.S. 651, 656 (1977).  Because the statutory right "is fundamental to the concept of due process of law", any "decision to waive the direct appeal must . . . be an informed one."  *Arrastia v. United States*, 455 F.2d 736, 739 (5th Cir. 1972) (citations omitted).  Nevertheless, it is well settled that, with an informed and voluntary waiver, a defendant may waive his statutory right to pursue claims on appeal.  *See, e.g., United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005); *United States v. McKinney*, 406 F.3d 744, 746 (5th Cir. 2005); *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002); *United States v.*

---

[1] Other than noting its submission, the Court does not otherwise consider the affidavit.

5

*Robinson*, 187 F.3d 516, 517 (5th Cir. 1999); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam); *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994); *United States v. Baty*, 980 F.2d 977, 978 (5th Cir. 1992); *United States v. Melancon*, 972 F.2d 566, 567 (1992).

"So long as a plea is informed and voluntary, [the appellate courts] will enforce a waiver of appeal." *United States v. Dees*, 125 F.3d 261, 269 (5th Cir. 1997). The courts of appeal may "determine whether the waiver was knowing and voluntary and whether the waiver applies to the circumstances at issue."[2] *United States v. Hemler*, 169 Fed. App'x 897, 898 (5th Cir.) (per curiam), *cert. denied*, 127 S. Ct. 146 (2006); *accord Bond*, 414 F.3d at 544-45; *United States v. Cortez*, 413 F.3d 502, 503 (5th Cir. 2005). The district courts, of course, may also determine whether a particular criminal defendant has knowingly and voluntarily waived his or her right to appeal.

"A defendant's waiver of [his or] her right to appeal is not informed if the defendant does not know the possible consequences of [the] decision." *Baty*, 980 F.2d at 979. A "key[] to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993). A waiver-of-appeal provision is enforceable when *either* of two circumstances are present: "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* at 1351.

The district courts have the responsibility "to insure that the defendant fully understands [his or] her right to appeal and the consequences of waiving that right." *Baty*, 980 F.2d at 979. A waiver

---

[2] The terms "knowing" and "informed" are essentially two ways to express the same thought. *See United States v. Bushert*, 997 F.2d 1343, 1350 n.16 (11th Cir. 1993).

of a "right to appeal deserves and, indeed, requires the special attention of the district court." *Id.* As it existed when movant pled guilty in September 2002, Fed. R. Crim. P. 11 required the courts to "inform the defendant of, and determine that the defendant underst[ood] . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence." *See* Fed. R. Crim. P. 11(c)(6) (now re-worded and set forth in Fed. R. Crim. P. 11(b)(1)(N)). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). Despite various changes over the years, Rule 11 continues to provide procedural safeguards for assuring that guilty pleas and accompanying waivers are entered voluntarily and knowingly. Fed. R. Civ. P. 11 (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *Vonn*, 535 U.S. at 62 (recognizing the evolution of the rule over the past three decades).

Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627 (5th Cir. 1993). Compliance would provide similar protection for the statutory rights involved in the entry of the plea. "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Vonn*, 535 U.S. at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require the Court to determine that the defendant has a perfect understanding of the consequences. In fact, the Supreme Court "has found that the Consti-

7

tution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Ruiz*, 536 U.S. at 623.  The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea.  *See Gracia*, 983 F.2d at 627-28 (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").

> The manner in which the charge is explained and the method for determining the defendant's understanding necessarily vary from case to case depending upon the capacity of the defendant and the attendant circumstances.  In making that determination, the court should not exalt form over substance but should look to the reality of the situation as opposed to the ritual.

*United States v. Allard*, 926 F.2d 1237, 1245 (1st Cir. 1991).

There are no "magic words" or phrases or "talismanic test[s]" to show compliance with the admonishments required under Fed. R. Crim. P. 11.  *See United States v. Medina-Silverio*, 30 F.3d 1, 3 (1st Cir. 1994); *accord* Fed. R. Crim. P. 11 advisory committee note 1983 amend.  "Although district courts are encouraged to track the language of Rule 11," deviations from the language of the rule does not mandate a conclusion that the defendant was uninformed of his or her rights or that the plea was involuntarily or unknowingly entered.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).  Even a "failure to advise the defendant of his right to appeal does not entitle" the

defendant to collateral relief, unless he has suffered "prejudice from the omission."[3]  *See Peguero v. United States*, 526 U.S. 23, 24 (1999) (addressing issue in context of Fed. R. Crim. P. 32).

With these principles in mind, the Court examines whether movant knowingly and voluntarily waived his right to appeal in light of his allegations. A review of the record as a whole reflects that movant, a forty-two-year-old man with a high school education, faced three charges including the one to which he pled guilty, *i.e.*, that he conspired to manufacture and possess with intent to distribute methamphetamine. The record reflects that movant was informed about and understood the nature of the conspiracy charge against him. He knew the maximum prison term and fine which he could face for that offense. The plea agreement indicates that movant understood that he was waiving certain Constitutional rights by pleading guilty. The agreement also indicates that the Court would impose the sentence in accordance with the sentencing guidelines, that there was no agreement as to what the sentence would be, that no one promised or represented what sentence the Court would impose, and that no one could predict with certainty the applicable guideline range until the completion of a pre-sentence investigation. The agreement lastly indicates that the plea agreement constituted the entirety of the agreement entered in this case. The waiver provision of

---

[3] The Supreme Court has long held that guilty pleas are not to be overturned on collateral review for mere non-compliance with Rule 11. *See United States v. Timmreck*, 441 U.S. 780, 783-85 (1979). To obtain collateral review on a challenge to admonitions given under Rule 11, those who plead guilty must show "that the Rule 11 proceeding was 'inconsistent with the rudimentary demands of fair procedure' or constituted a 'complete miscarriage of justice.'" *Vonn*, 533 U.S. at 64 (quoting *Timmreck*, 441 U.S. at 783, which in turn quoted *Hill v. United States*, 368 U.S. 424, 428 (1962)). There must be some "aggravating circumstances" before non-compliance with the mandates of Rule 11 entitle a prisoner to collateral relief under § 2255. *See Timmreck*, 441 U.S. at 784-85.

Notably, Congress added a harmless-error subparagraph (subparagraph (h)) in 1983 to "deal[] with a slip-up by the judge in applying the Rule itself." *Vonn*, 535 U.S. at 62. The inclusion of a harmless-error subparagraph has "had no effect on the stringent standard for collateral review of Rule 11 error under 28 U.S.C. § 2255" established in *Timmreck*. *Vonn*, 535 U.S. at 63. When movant pled guilty in September 2002, subparagraph (h) read: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." After amendments effective December 1, 2002, it reads: "A variance from the requirements of this rule is harmless error if it does not affect substantial rights."

the plea agreement explicitly and unambiguously waived movant's right to directly appeal or collaterally challenge his conviction and sentence pursuant to 28 U.S.C. § 2255 except in limited circumstances.

In addition, the transcript of the re-arraignment proceedings clearly shows that movant was informed of such waiver. The government's summary of the plea agreement specifically informed him that he was waiving his right to appeal his sentence on any ground, except in specifically identified limited circumstances. The Court then expressly brought the waiver provision to movant's attention, defense counsel indicated that two attorneys had talked to movant about the provision, and movant agreed with defense counsel and specifically indicated that he had no questions about the plea agreement. The transcript shows that movant knew that his plea would limit his appellate rights. He certainly knew that he had a right to appeal and that he was giving up that right except as reserved in the written plea agreement. In light of the statements of movant and his attorney at re-arraignment, the Court found that movant entered the plea voluntarily. The totality of the circumstances shows that, at the time of the re-arraignment proceedings and the entry of his plea, movant understood that he was waiving his appellate rights as set forth in the plea agreement. He entered such plea with sufficient knowledge regarding the waiver of his appellate rights, including his right to present claims in a collateral attack pursuant to 28 U.S.C. § 2255.

Moreover, prisoners who challenge the voluntariness of a waiver within a plea agreement on collateral review must overcome various presumptions related to court documents and prior testimony.

> [R]epresentations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open

court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Courts also presume the regularity of court documents and accord them "great weight." *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity"). Movant has not overcome these presumptions. He merely provides a letter to the Court wherein he indicates that he wants to fire his attorney and his own affidavits wherein he avers among other things that he had difficulties contacting his attorneys; that he was not informed of the consequences of the waiver provision; that "to show respect" for the Court, he would regularly answer "Yes, sir" to the Court's inquiries; and that he answered "Yes, sir" to the Court's inquiry regarding the waiver provision because he "was nervous and . . . did not hear or understand the question or know what else to say." The submitted documents do not overcome the presumptions.

Movant alleges that his attorney failed to advise him regarding all terms of the plea agreement, thus causing him to involuntarily waive his right to appeal and that his attorney's ineffectiveness violates his right to due process. "[A]n ineffective assistance of counsel argument survives a waiver of appeal . . . when the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). To successfully state a claim of ineffective assistance of counsel, the prisoner must generally demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland*

11

*v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective. *Id.* at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In the guilty plea context, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

In this case, even assuming that counsel failed to advise movant regarding the waiver provision, the government's summary of the plea agreement and the Court's admonitions at the plea hearing provided sufficient notice of the waiver provision and its consequences to find the waiver knowingly and voluntarily entered. The alleged deficiency of counsel does not constitute ineffective assistance of counsel because movant was not prejudiced by the deficiency. The information provided to movant at the plea hearing cured any deficiency of counsel regarding the waiver provision. Movant, moreover, does not contend that, in the absence of the deficiency of counsel, he would not have pled guilty, but would have insisted on proceeding to trial. To the contrary, he avers that "I certainly still would have pleaded guilty" even with an understanding that the waiver would prevent him from challenging the imposed sentence. Although he further avers that he would have asked his attorney to change the agreement so that he could appeal, he provides nothing to indicate that such change was amenable to the government. The Court can find no prejudice from the alleged deficiency of counsel based upon the facts before it.

Movant essentially claims that he lacked a perfect understanding of the consequences of his guilty plea on his appellate rights. Assuming that movant indeed lacked such perfect understanding for purposes of this recommendation, such imperfect knowledge does not render the waiver involuntary or unknowing. Movant certainly had a reasonable understanding of the consequences of his plea on his appellate rights. That is all that is required to find a voluntary and knowing waiver. The Court should find no ineffective assistance of counsel or due process violation in this case.

For these reasons, movant provides no legitimate basis to find that he involuntarily or unknowingly waived his right to appeal. From the record before it, the Court finds that movant voluntarily waived his right to appeal as set forth in the written plea agreement and discussed at the re-arraignment hearing. Such finding comports with the implicit finding of the Fifth Circuit Court of Appeals related to movant's appeal. The Fifth Circuit dismissed movant's appeal because of the waiver provision contained within movant's plea agreement. The Fifth Circuit would not have done so had it determined that movant had not entered a voluntary and informed waiver of appeal. *See United States v. Rodriguez-Perez*, 184 Fed. App'x 451, 453 (5th Cir.) (finding "the appeal waiver was not knowing and voluntary" and thus did not bar the appeal), *cert. denied*, 127 S. Ct. 461 (2006).

Movant relies heavily on *United States v. Baty*, 980 F.2d 977 (5th Cir. 1992) for finding that he did not knowingly waive his right to appeal. In *Baty*, however, the plea colloquy clearly showed that the defendant did not understand the consequences of the waiver. *See* 980 F.2d at 979-80. "On more than one occasion, Baty specifically asked the court to explain" the waiver provision, but "there was no satisfactory explanation [given] to Baty of the consequences of her waiver of her right to appeal." *Id.* Such circumstances are not present here. Nowhere in the plea colloquy does movant express any lack of understanding of the plea agreement or the waiver provision. The Court admon-

ished movant in accordance with Fed. R. Crim. P. 11. Although the Court did not specifically ask movant whether he understood the waiver provision in so many words, the Court's admonitions included a definite inquiry into his awareness and understanding of the waiver provision. The Court asked counsel whether he went over that particular provision with movant, counsel indicated that he and another attorney had done so, and movant immediately stated that he agreed with his attorney and further stated that he had no questions about the plea agreement. The circumstances of the plea hearing in this case makes *Baty* distinguishable.

The Court should reaffirm its finding that movant voluntarily and understandingly pled guilty to the charge against him. It should find that movant voluntarily and knowingly waived his right to appeal except for the specific grounds set forth in the plea agreement. It should find that no ineffective assistance of counsel rendered the waiver unknowing or involuntary and that movant's due process rights were not violated in this case.

### III. EVIDENTIARY HEARING

Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. No evidentiary hearing is required, when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

### IV. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 6th day of March, 2007.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE